Docket No. 94814–Agenda 12–May 2003.

CHARLES ALLEN 
et al.
, Appellees, v. WOODFIELD

 CHEVROLET, INC., Appellant.

Opinion filed October 17, 2003.

JUSTICE FITZGERALD delivered the opinion of the court:

At issue in this appeal is whether certain amendments to the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 
et seq.
 (West 1996)), which govern consumer fraud claims against new or used vehicle dealers, violate the Illinois constitutional prohibition against special legislation. See Ill. Const. 1970, art. IV, §13. The trial court found no constitutional infirmity; the appellate court reversed. 332 Ill. App. 3d 605. We hold that the statutory amendments constitute impermissible special legislation and therefore affirm the appellate court judgment invalidating these amendments.

BACKGROUND

In April 1996, plaintiff, Charles Allen, purchased a used vehicle from defendant, Woodfield Chevrolet, Inc. In November 1998, plaintiff filed an action against defendant in the circuit court of Cook County in connection with that purchase. In count I, plaintiff sought monetary damages under the Act for false and misleading conduct. Plaintiff alleged that defendant “advertised one price and then charged a different price for the same car.” In count II, plaintiff sought a declaration that certain amendments to section 10a of the Act constitute special legislation on behalf of car dealers and are thus unconstitutional. See Pub. Act 87–1140, eff. January 1, 1993; Pub. Act 89–144, eff. January 1, 1996. Alternatively, plaintiff sought a declaration that these amendments violate the equal protection clauses of the state and federal constitutions. See Ill. Const. 1970, art. I, §2; U.S. Const., amend. XIV, §1. Among the challenged amendments was a provision requiring that plaintiff provide defendant with 30-days written notice before filing suit. See 815 ILCS 505/10a(h) (West 1996). Plaintiff admitted, in his complaint, that he did not comply with the presuit notice requirement.

Plaintiff moved for judgment on the pleadings as to count II, arguing that the amendments “treat car dealers more favorably than other similarly-situated consumer-fraud defendants and treat consumers who have claims against car dealers differently than consumers having claims against non-car dealers.” Plaintiff maintained that the “car-dealer classification,” created by the amendments, is not rationally related to a legitimate state interest. The trial court rejected plaintiff’s argument: “[T]he classification is properly related to the problem sought to be remedied by the amendments, which is to encourage settlement between consumers and automobile dealers as well as avoid unnecessary litigation and limit attorney’s fees.” The trial court thus denied plaintiff’s motion, entered judgment in favor of defendant on count II, and dismissed count I based on plaintiff’s failure to provide defendant with the statutorily required presuit notice. Plaintiff appealed.

The appellate court reversed, holding that the subject amendments violate the constitutional prohibition against special legislation. 332 Ill. App. 3d 605. The appellate court stated, in relevant part:

“Assuming that the state has a legitimate interest in the settling of disputes and in discouraging lawsuits brought merely to generate attorney fees, there is nothing more unique about a fraud case brought against a car dealer than one brought against any other person or entity subject to the Act. Moreover, the effect of the legislation in this case is to penalize the consumer and not the attorneys who, according to the legislative history, are the ones the legislators deemed responsible for filing lawsuits merely to generate fees for themselves.” 332 Ill. App. 3d at 614.

The appellate court did not consider plaintiff’s equal protection challenge. 332 Ill. App. 3d at 617.

We allowed defendant’s petition for leave to appeal, and allowed the Illinois Automobile Dealers Association and the Chicago Automobile Trade Association to file a joint 
amicus curiae
 brief in support of defendant. See 155 Ill. 2d R. 345. For the reasons discussed below, we now affirm the judgment of the appellate court.

ANALYSIS

I. Amendments to the Consumer Fraud Act

The Act, originally adopted in 1961 (see 1961 Ill. Laws 1867), declares unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. 815 ILCS 505/2 (West 1996). The Act confers upon the Attorney General the power to investigate alleged violations of the Act and to prosecute offenders, pursuing injunctive relief, restitution and civil penalties. 815 ILCS 505/3 through 505/7 (West 1996). With the addition of section 10a to the Act in 1973, the General Assembly expressly authorized private causes of action for deceptive business practices proscribed under the Act. Pub. Act 78–904, eff. October 1, 1973 (codified at 815 ILCS 505/10a(a) (West 1996)).

Prior to the adoption of the subject amendments, section 10a did not distinguish among consumer fraud litigants or claims. Generally, any “person,” as that term is defined in the Act (815 ILCS 505/1(c) (West 1992)), who suffered damage as a result of a violation of the Act committed by any other person could bring an action under section 10a. 815 ILCS 505/10a(a) (West 1992). The only express requirement was that the action be commenced within three years from the date it accrued. 815 ILCS 505/10a(e) (West 1992). “Proof of a public injury, a pattern, or an effect on consumers generally” was not required under section10a (815 ILCS 505/10a(a) (West 1992)). But see J. Feehan, 
The Illinois Consumer Fraud Act and the “Public Injury” Debate
, 80 Ill. B.J. 136 (1992). The court, in its discretion, could award actual damages, or any other relief it deemed proper, including injunctive relief and attorney fees and costs. 815 ILCS 505/10a(a), (c) (West 1992). The court could also award punitive damages. See 
Martin v. Heinold Commodities, Inc.
, 163 Ill. 2d 33, 79-82 (1994).

The subject amendments, effective in 1993 and 1996, added provisions to section 10a that changed the substantive and procedural requirements for consumer fraud claims against a single group of defendants, namely, new and used vehicle dealers. The amendments also affected the remedies available to consumer fraud plaintiffs in actions against vehicle dealers.

The 1993 amendment added subsections (f) and (g) which contain offer-of-judgment provisions. At any time more than 30 days prior to trial, a consumer fraud plaintiff or the defendant vehicle dealer may make an offer to allow judgment to be taken against the dealer. Under subsection (f), if the plaintiff rejects the dealer’s offer of judgment and later fails to obtain a judgment greater than the offer, the plaintiff forfeits attorney fees and costs from the date of the offer. Under subsection (g), if the dealer rejects the plaintiff’s offer and the plaintiff later obtains a judgment equal to or greater than the offer, the dealer must pay interest at the statutory rate from the date of the offer to the date the judgment is paid. See Pub. Act 87–1140, eff. January 1, 1993.

The 1996 amendment added language to existing subsection (a) limiting the circumstances under which the trial court may make an award of punitive damages against a new or used vehicle dealer, and making proof of a “public injury” a required pleading element of a cause of action against a vehicle dealer. The 1996 amendment also added subsection (h), which requires consumer fraud plaintiffs to provide vehicle dealers with a 30-day written notice before filing suit. Subsection (h) additionally sets forth procedures for pre-suit settlement offers from vehicle dealers. If a potential plaintiff rejects a pre-suit settlement offer and in a subsequent action obtains a judgment less than the presuit offer, the court may not award attorney fees and costs incurred by the plaintiff after the rejection of the offer. See Pub. Act 89–144, eff. January 1, 1996.

Following the adoption of these amendments, section 10a read, in relevant part:

“§10a. Action for actual damages. (a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper; provided, however, that no award of punitive damages may be assessed under this Section against a party defendant who is a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code, unless the conduct engaged in was willful or intentional and done with evil motive or reckless indifference to the rights of others. Proof of a public injury, a pattern, or an effect on consumers and the public interest generally shall be required in order to state a cause of action under this Section against a party defendant who is a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code. Proof of such public injury may be shown by any one of the following factors:

(1) Violation of a statute that has a public interest impact.

(2) Repeated acts prior to the act involving the plaintiff.

(3) Potential for repetition.

***

(c) Except as provided in subsections (f), (g), and (h) of this Section, in any action brought by a person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney’s fees and costs to the prevailing party.

* * *

(f) At any time more than 30 days before the commencement of trial, a party, who is a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code and who is defending a claim under this Act, may serve upon the party seeking relief under this Act an offer to allow judgment to be taken against the defending party to the effect specified in the offer with costs then accrued. If within 10 days after service of the offer, the offeree serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service of the notice; the court shall then enter judgment. An offer not accepted shall be deemed withdrawn and evidence of the offer is not admissible except in a proceeding to determine costs. When a party seeking relief under this Act does not accept an offer filed with the clerk and served upon the attorney for that party more than 30 days before the commencement of trial and when that party fails to obtain a judgment in an amount more than the total offer of settlement, that party shall forfeit and the court may not award any compensation for attorney’s fees and costs incurred after the date of the offer.

(g) At any time more than 30 days before the commencement of trial, a party who is seeking relief under this Act from a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code may serve the dealer an offer to allow judgment to be taken against the dealer to the effect specified in the offer with costs then accrued. If within 10 days after service of the offer, the offeree serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service of the notice; the court shall then enter judgment. An offer not accepted shall be deemed withdrawn and evidence of the offer is not admissible except in a proceeding to determine costs. When a dealer does not accept an offer filed with the clerk and served upon the attorney for the dealer more than 30 days before the commencement of trial and if the party seeking relief against a dealer obtains a judgment in an amount equal to or in excess of the offer amount, the party seeking relief shall be paid interest on the offer amount at the rate as provided in Section 2–1303 of the Code of Civil Procedure from the date of the offer until the judgment is paid.

(h) At least 30 days prior to the filing of an action under this Section, a party who is seeking relief shall serve a written notice of the nature of the alleged violation and demand for relief upon the prospective party, who is a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code, against whom such action will be commenced. Any person receiving such a demand for relief may, within 30 days of service of the demand for relief, submit a written offer of settlement, which offer is to be exclusive of attorney’s fees, to the party serving the notice and demand. The party who is seeking relief must certify in any cause of action that the notice and demand was served upon the named defendants and the substance of their response, if any. If the offer of settlement is rejected in writing by the party who is seeking relief, then, in any subsequent action, the court shall deny any award of attorney’s fees and costs requested by the party seeking relief under this Act incurred after the rejection of the written offer of settlement, if the judgment is less than the amount contained within the offer of settlement. All written offers of settlement under this subsection shall be presumed to be offered without prejudice in compromise of a disputed matter.” 815 ILCS 505/10a (West 1996).

Section 10a, as amended, clearly divides consumer fraud plaintiffs into two groups: consumers defrauded by new and used vehicles dealers, who are subject to the statutory amendments, and all other defrauded consumers who are not subject to the amendments. The statute likewise divides consumer fraud defendants into two groups: new and used vehicle dealers to whom the amendments apply, and all other purveyors of consumer goods and services who are outside the scope of the amendments. Whether this classification runs afoul of the special legislation clause is the question we now take up.

II. Special Legislation Challenge

We begin our analysis with the presumption that the Act, as amended by Public Act 87–1140, effective January 1, 1993, and Public Act 89–144, effective January 1, 1996, is constitutional. See 
In re Estate of Jolliff
, 199 Ill. 2d 510, 517 (2002); 
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 377 (1997). This presumption means that we must uphold the statute’s validity if reasonably possible. See 
Beaubien v. Ryan
, 198 Ill. 2d 294, 298 (2001). This presumption also requires that plaintiff, as the party challenging the statute in this case, bear the burden of clearly establishing the statute’s constitutional infirmity. See 
Jolliff
, 199 Ill. 2d at 517;
 Beaubien
, 198 Ill. 2d at 298. Because the constitutionality of a statute is an issue of law, we review 
de novo
 the appellate court’s decision invalidating the statutory amendments. See 
Jolliff
, 199 Ill. 2d at 517; 
In re R.C.
, 195 Ill. 2d 291, 296 (2001).

The special legislation clause of the Illinois Constitution provides:

“The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination.” Ill. Const. 1970, art. IV, §13.

The special legislation clause expressly prohibits the General Assembly from conferring a special privilege or benefit upon a person or group of persons while excluding others similarly situated. 
Best
, 179 Ill. 2d at 391. Although the legislature enjoys broad discretion in making statutory classifications, the legislature is prohibited, under the special legislation clause, from making arbitrary classifications which discriminate in favor of a select group without a sound and reasonable basis. 
Jolliff
, 199 Ill. 2d at 519. Our analysis thus involves a dual inquiry. We must determine first whether the statutory amendments discriminate in favor of a select group and, if so, whether the classification created by the statutory amendments is arbitrary. See 
Jolliff
, 199 Ill. 2d at 519. Where, as here, the statute under consideration does not affect a fundamental right or involve a suspect classification, it will be judged under the rational basis test. Under this test, the statute is constitutional if the legislative classification is rationally related to a legitimate state interest. 
Unzicker v. Kraft Food Ingredients Corp.
, 203 Ill. 2d 64, 86 (2002); 
Jolliff
, 199 Ill. 2d at 520.

Turning to the first inquiry–whether the statutory amendments discriminate in favor of a select group–we conclude that the amendments plainly favor new and used vehicle dealers. The amendments discourage consumers defrauded by vehicle dealers from pursuing claims under section 10a by making it more burdensome for consumers to do so. For example, a consumer defrauded by a vehicle dealer must provide the dealer with a 30-day presuit notice. 815 ILCS 505/10a(h) (West 1996). No other consumer fraud defendant is entitled to such notice. A plaintiff’s failure to provide this statutory notice could result in dismissal of the cause of action, as was the case here. Additionally, in order to state a cause of action against a vehicle dealer, a consumer must plead facts demonstrating “a public injury, a pattern, or an effect on consumers and the public interest generally.” 815 ILCS 505/10a(a) (West 1996). This pleading requirement is inapplicable to claims against all other consumer fraud defendants. Moreover, a consumer defrauded by a vehicle dealer must contend with special offer-of-judgment rules, not applicable in any other consumer fraud case. These rules, like the pretrial settlement rules, carry the risk of forfeiture of attorney fees. 815 ILCS 505/10a(f) through (h) (West 1996). The statutory amendments also seek to shield dealers from punitive damage awards that other consumer fraud defendants may bear. See 815 ILCS 505/10a(a) (West 1996). At bottom, the amendments place new and used vehicle dealers on more advantageous footing than all other retailers subject to the Act, thus creating a favored class of retailers.

Our conclusion that the amendments discriminate in favor of vehicle dealers is, of course, not dispositive of whether the amendments constitute special legislation. We must further determine, under the second part of our dual inquiry, whether the classification effected by the amendments is arbitrary. See 
Jolliff
, 199 Ill. 2d at 519. If this court can reasonably conceive of circumstances that justify distinguishing the class that the statute benefits from the class outside its scope, the classification will be deemed constitutional. 
Unzicker
, 203 Ill. 3d at 86; 
Jolliff
, 199 Ill. 2d at 520.

The appellate court could conceive of no such circumstance: “[T]here is nothing more unique about a fraud case brought against a car dealer than one brought against any other person or entity subject to the Act.” 332 Ill. App. 3d at 614. Thus, the appellate court concluded that the classification was arbitrary and violated the prohibition against special legislation. Defendant, as appellant, urges us to reverse the appellate court. Defendant argues that the different treatment accorded to vehicle dealers under the amendments is consistent with other legislation regulating the activity of selling automobiles. Defendant also argues that the legislature perceived a problem specific to vehicle dealers which separates them from all other retailers, thus justifying different treatment under the Act.

In support of its first argument, defendant cites the Motor Vehicle Retail Installment Sales Act (815 ILCS 375/1 
et seq.
 (West 2002)), the Motor Vehicle Franchise Act (815 ILCS 710/1 
et seq.
 (2002)), and the New Vehicle Buyer Protection Act (815 ILCS 380/1 
et seq.
 (2002)) as examples of legislation which impose regulations on vehicle dealers that are not imposed on other retailers. Further citing this court’s decision in 
Fireside Chrysler-Plymouth, Mazda, Inc. v. Edgar
, 102 Ill. 2d 1 (1984), defendant maintains that the present legislation is no different from these statutes and is not constitutionally infirm.

In 
Fireside
, we considered a special legislation challenge to a Sunday-closing law applicable only to vehicle dealers. Although we had 20 years earlier struck down a nearly identical Sunday-closing law as special legislation (
Courtesy Motor Sales v. Ward
, 24 Ill. 2d 82 (1962)), we recognized that recent legislation (including the three statutes to which defendant here cites) “demonstrate[s] a legislative purpose to regulate certain aspects of the business of selling automobiles in a manner different from other retail enterprises.” 
Fireside
, 102 Ill. 2d at 6. We held that the Sunday-closing law was part of that regulatory scheme. 
Fireside
, 102 Ill. 2d at 6-7.

Fireside
 does not support defendant’s argument that different treatment of vehicle dealers is justified in this case. Unlike the Sunday-closing law, and the other statutes defendant cites, the statutory amendments at issue here cannot reasonably be deemed part of the legislative scheme for regulating the business of selling automobiles. The “Consumer Fraud and Deceptive Business Practices Act” (815 ILCS 505/1 
et seq.
 (West 1996)), as the name suggests, is “intended to curb a variety of fraudulent abuses.” 
Scott v. Ass’n for Childbirth at Home, International
, 88 Ill. 2d 279, 288 (1981). The Act is also intended to “provide a remedy to individuals injured by [such abuses].” 
Scott
, 88 Ill. 2d at 288. The amendments to section 10a of the Act changed the way in which a consumer, defrauded by a vehicle dealer, may exercise his or her statutory right to seek redress. The amendments, in effect, limited the protections the Act affords those consumers. The amendments do not speak to the sales practices of vehicle dealers. We therefore reject defendant’s argument that the statutory amendments to section 10a are simply part of the legislature’s ongoing regulation of automobile sales.

We next consider defendant’s argument that the legislature perceived a problem specific to vehicle dealers that separates them from all other retailers. In support, defendant directs our attention to the legislative history of the statutory amendments. This court will consider legislative history in ascertaining the intent of the General Assembly if the resolution of an issue so requires. 
Best
, 179 Ill. 2d at 382; see, 
e.g.
, 
Unzicker
, 203 Ill. 2d at 86-88 (where this court undertook a comprehensive review of legislative history because the reason for the classification was not apparent from the face of the statute); 
Jolliff
, 199 Ill. 2d at 521-22 (where this court considered legislative history in determining whether statutory classification was arbitrary). In this case, the reason for the classification is not apparent from the language of the statute itself. Accordingly, we turn to the legislative history of Public Acts 87–1140 and 89–144.

 Public Act 87–1140 was first introduced in the House of Representatives as House Bill 3410. The bill was passed in the House and referred to the Senate as a “shell” bill, 
i.e.
, a bill with a name but no text. 87th Ill. Gen. Assem., House Proceedings, May 5, 1992, at 27-28; 87th Ill. Gen. Assem., House Proceedings, May 6, 1992, at 92. In the Senate, the bill was amended first to add what is now section 10a(f), which, as set forth above, permits vehicle dealers who are defending a consumer fraud claim to make an offer of judgment prior to trial. This provision was patterned after the federal “Offer of Judgment Rule” (Fed. R. Civ. P. 68) and intended “to encourage reasonable settlements of disputes by penalizing parties that reject reasonable settlement offers.” 87th Ill. Gen. Assem., Senate Proceedings, June 19, 1992, at 16 (statements of Senator Weaver). Proponents of the provision cited abuses by attorneys who discourage clients from settling disputes with vehicle dealers in order to generate higher fees. See 87th Ill. Gen. Assem., Senate Proceedings, June 19, 1992, at 17, 19-20 (statements of Senators Weaver and Jacobs). Opponents of the offer-of-judgment provision believed it would have a “chilling effect” on a consumer’s right to seek redress under the Act by limiting the consumer’s ability to pay attorney fees and, in turn, obtain legal representation. 87th Ill. Gen. Assem., Senate Proceedings, June 19, 1992, at 17-18, 20 (statements of Senator Dunn).

The Senate also adopted a second amendment to House Bill 3410 that added what is now section 10a(g), permitting a consumer fraud plaintiff to make an offer of judgment before trial in a suit against a vehicle dealer. The purpose of this amendment was to “balance the scales” and “even up what [the Senate] did with Amendment No. 1.” 87th Ill. Gen. Assem., Senate Proceedings, June 23, 1992, at 162 (statements of Senator Hawkinson).

Public Act 89–144 began life as Senate Bill 317. This bill changed the pleading requirements for a cause of action against a vehicle dealer by adding a “public injury” element, and attempted to raise the bar for an award of punitive damages against a vehicle dealer. It also established a presuit notice requirement, and set forth procedures for presuit settlement offers from vehicle dealers. According to one of its sponsors, Senate Bill 317 was intended to address the problem posed by an “aggressive group of plaintiffs’ attorneys” who “churn” consumer fraud cases against vehicle dealers, 
i.e.
, who pursue small claims without a good-faith basis in order to “ring up” attorney fees recoverable under the Act. 89th Ill. Gen. Assem., Senate Proceedings, April 26, 1995, at 30 (statements of Senator Cronin). The 30-day notice provision was meant to remedy this problem by giving the parties an opportunity to work out a settlement before it goes to trial, “almost like mandatory arbitration.” 89th Ill. Gen. Assem., Senate Proceedings, April 26, 1995, at 31-32 (statements of Senator Cronin). Senators opposed to the bill found its provisions “onerous” for consumers, a view reportedly shared by numerous consumer groups. 89th Ill. Gen. Assem., Senate Proceedings, April 26, 1995, at 29-32 (statements of Senators Palmer and Trotter).

In the House of Representatives, Senate Bill 317 was described as an attempt to provide vehicle dealers protection from abuses of section 10a and to clean up confusion stemming from judicial misinterpretation of the Act that purportedly resulted in excessive punitive damage awards against vehicle dealers. 89th Ill. Gen. Assem., House Proceedings, May 22, 1995, at 268-71, 276 (statements of Representatives Cross and Brunsvold). The bill was also described as a measure to promote settlement, keep cases out of court and, in turn, “keep attorney’s fees down.” 89th Ill. Gen. Assem., House Proceedings, May 22, 1995, at 275-76 (statements of Representatives Cross and Brunsvold). The amendatory language, applicable only to vehicle dealers, was reported to be the product of negotiation and agreement between the Trial Lawyers Association and the office of the Attorney General. 89th Ill. Gen. Assem., House Proceedings, May 22, 1995, at 273, 276-77, 290 (statements of Representatives Cross and Brunsvold); see also 89th Ill. Gen. Assem., Senate Proceedings, April 26, 1995, at 30 (statements of Senator Cronin). Representatives opposed to Senate Bill 317 questioned the necessity of creating a separate standard under the Act for consumer fraud claims against vehicle dealers–the main target of consumer complaints. The legislation, it was argued, creates a maze of notice and negotiation requirements for consumers and sets up pleading requirements impossible to prove, thus giving an unfair advantage to vehicle dealers. 89th Ill. Gen. Assem., House Proceedings, May 22, 1995, at 270-93 (statements of Representatives Schakowsky, Scott, and Currie).

The history of Public Acts 87–1140 and 89–144 demonstrates that they were enacted in response to a perceived problem: abuses of the Act by certain members of the plaintiffs’ bar who purportedly pursue consumer fraud cases against vehicle dealers simply to generate legal fees recoverable under the Act. Because the General Assembly is not required to convince this court of the correctness of its judgment, we will not second-guess its conclusion that this problem, of whatever magnitude, exists. See 
Best
, 179 Ill. 2d at 377, 389-90 (declining to consider, for purposes of constitutional challenge to Civil Justice Reform Amendments of 1995, whether the legislature’s judgment that the civil justice system needs reform was correct); 
Bernier v. Burris
, 113 Ill. 2d 219, 230 (1986) (stating that existence of medical malpractice crisis identified by the legislature was at least debatable for purposes of special legislation challenge); 
Grace v. Howlett
, 51 Ill. 2d 478, 485 (1972) (assuming, for purposes of special legislation challenge, that problems described by proponents of the legislation do exist). Our task is not to determine whether the statutory amendments are wise; our task is to determine whether they are constitutional. See 
Best
, 179 Ill. 2d at 390.

“[T]he hallmark of an unconstitutional classification is its arbitrary application to similarly situated individuals without adequate justification or connection to the purpose of the statute.” 
Best
, 179 Ill. 2d at 396; see also 
Grasse v. Dealer’s Transport Co.
, 412 Ill. 179, 193-94 (1952) (“it must appear that the particular classification is based upon some real and substantial difference in kind, situation or circumstance in the persons or objects on which the classification rests, and which bears a rational relation to the evil to be remedied and the purpose to be attained by the statute”). In evaluating a challenged statutory provision under the special legislation clause, we must consider “the natural and reasonable effect of the legislation on the rights affected by the provision.” 
Best
, 179 Ill. 2d at 394. As discussed below, application of these principles in the present case leads us to conclude that the statutory amendments to section 10a of the Act constitute impermissible special legislation.

Under the punitive damage provision added by Public Act 89–144, a court may not award punitive damages where a vehicle dealer defrauds a consumer unless the plaintiff pleads and proves that the dealer’s conduct was “willful or intentional and done with evil motive or reckless indifference to the rights of others.” 815 ILCS 505/10a(a) (West 1996). Limiting the circumstances under which a vehicle dealer may be subject to punitive damages does not constitute a disincentive for attorney abuse of section 10a–the problem the legislature sought to address. According to the legislative history, attorneys pursue consumer fraud claims to “ring up” fees recoverable under the Act. 89th Ill. Gen. Assem., Senate Proceedings, April 26, 1995, at 30 (statements of Senator Cronin). Attorney fees, however, may be awarded in the absence of punitive damages. Thus, the punitive damage provision, which favors vehicle dealers, is not adequately connected to the purpose of the legislation.

The “public injury” provision suffers from the same infirmity. Under this provision, in order to state a cause of action against a vehicle dealer under section 10a, a consumer must plead facts demonstrating a “public injury, a pattern, or an effect on consumers and the public interest generally.” 815 ILCS 505/10a(a) (West 1996). Factors demonstrating a public injury include violation of a statute that has a public interest impact, repeated acts prior to the act involving the plaintiff, and the potential for repetition. 815 ILCS 505/10a(a) (West 1996). This additional hurdle increases the burden to consumers defrauded by vehicle dealers by requiring proof of an element not required in any other consumer fraud case. We fail to see in what way this increased burden to consumers, and concomitant benefit to vehicle dealers, addresses the problem of attorney abuse perceived by the legislature. To be sure, an attorney cannot “ring up” fees if the minimum pleading requirements cannot be satisfied and the case cannot proceed. The result, however, is that consumers who have legitimate claims against vehicle dealers may be precluded entirely from vindicating their rights under the Act.

The provisions governing presuit notice and offers of settlement (815 ILCS 505/10a(h) (West 1996)) and the provisions governing pretrial offers of judgment (815 ILCS 505/10a(f), (g) (West 1996)) are also problematic. Under these provisions, a consumer defrauded by a vehicle dealer runs the risk of forfeiting attorney fees recoverable under the Act if the consumer improvidently rejects a vehicle dealer’s presuit offer of settlement or pretrial offer of judgment. That the consumer’s rejection of the offer was made in good faith or the difference between the offer and judgment is slight is of no consequence; if the offer is greater than the judgment ultimately obtained, the statutory amendments prohibit the court from awarding attorney fees. See 815 ILCS 505/10a(f), (h) (West 1996). The ability to recover attorney fees, however, allows defrauded consumers, whose claims are frequently small, to obtain counsel and seek redress under the Act. See 
Majcher v. Laurel Motors, Inc.
, 287 Ill. App. 3d 719, 732 (1997); 
Totz v. Continental Du Page Acura
, 236 Ill. App. 3d 891, 910 (1992). Compromising a consumer’s ability to recover legal fees renders the protections of the Act illusory.

Defendant contends, however, that the legislative history demonstrates that the General Assembly “perceived a crisis with respect to lawsuits filed against automobile dealers under the Act, and rationally undertook to reduce the burden on the automobile industry.” According to defendant, vehicle dealers are thus “unique among retailers,” and the classification favoring them does not offend the special legislation clause.

Defendant’s conclusion that the legislature perceived a “crisis” amounts to unsupported hyperbole. This aside, we disagree with defendant’s contention that vehicle dealers are “unique among retailers” for purposes of the statutory amendments to section10a. Rather, as is demonstrated by the following exchange during the House debates on Senate Bill 317, vehicle dealers are indistinguishable from other retailers:

“Currie: *** Could I ask why you want to single out car dealers rather than, for example, yacht dealers or other people who might in some manner defraud a hapless consumer?

* * *

Cross: Well, Representative, this was language that was agreed upon by ... as I said earlier, the trial lawyers and the Attorney General’s Office. In talking with them, it was an attempt to compromise, it was an attempt to work out an agreement. As I just said earlier, they are neutral on the Bill. This seems to be one area where there has been an abuse of this statute prior to this proposed Amendment. That’s the reason for limiting it to that. 
If you want to broaden the people or the entities or the agencies that have been listed, *** I’ll be glad to work with you on that. If you want to include yacht dealers that’s fine. If you want to include refrigerator dealers that’s fine, if you want to include air conditioner dealers that’s fine, motorcycle dealers.
 I’d be more than happy to talk to you about it.” (Emphasis added.) 89th Ill. Gen. Assem., House Proceedings, May 22, 1995, at 290-91 (statements of Representatives Currie and Cross).

Despite the “unique” position defendant claims vehicle dealers occupy, they are apparently no more unique than yacht dealers, refrigerator dealers, air conditioner dealers or motorcycle dealers.

Defendant also contends that the amendments to section 10a further the legislature’s objectives by promoting the equitable settlement of lawsuits against vehicle dealers and preventing the filing of frivolous suits against vehicle dealers. Defendant states: “There can be no better benefit bestowed upon the consumer who believes he/she has been wronged by an automobile dealer than to resolve the dispute quickly.” Without regard to whether a “better benefit” may be bestowed upon a consumer, we disagree with defendant that the punitive damage provision and public-injury pleading requirement promote settlement or prevent the filing of frivolous suits. To the extent the provisions governing presuit notice, presuit offers of settlement, and pretrial offers of judgment (815 ILCS 505/10a(f) through (h) (West 1996)) encourage consumers and vehicle dealers to evaluate the merits of a claim realistically, we agree with plaintiff that this is an area “where a general law *** can be made applicable.” Ill. Const. 1970, art. IV, §13. We note that the federal offer-of-judgment rule, upon which subsection 10a(f) was modeled, is a rule of general applicability in civil proceedings. Fed. R. Civ. P. 68.

We are cognizant that the legislature is not required to choose the single, most effective remedy against a perceived problem. 
Bernier
, 113 Ill. 2d at 252. Here, however, the remedy chosen by the legislature, and the resulting classification, are not adequately connected to the purpose of the statute. Indeed, the remedy turns the statute on its head. Rather than protecting consumers from unethical business practices of vehicle dealers, the amendments protect vehicle dealers from legitimate claims that the consumers of their products may possess. As we have previously recognized, “[t]he courts of this State must be open to all those similarly situated upon the same conditions, and where procedures are provided which are applicable to some and not applicable to others under substantially like circumstances and there are no discernible logical reasons apparent for the variations, they must fall as violative of [the special legislation clause].” 
Lorton v. Brown Community Unit School District No. 1
, 35 Ill. 2d 362, 366 (1966). The amendments to section 10a of the Act, which establish procedures applicable only to consumers pursuing fraud claims against vehicle dealers, fall into this category. Accordingly, we hold that Public Acts 87–1140 and 89–144 are void as impermissible special legislation. The effect of our determination is to relegate the parties to such rights as they may have had prior to the enactment of this legislation. See 
Grasse
, 412 Ill. at 201.

Our decision today is consistent with prior decisions of this court invalidating legislative classifications that had an artificially narrow focus, designed primarily to confer a benefit on a particular group, rather than to promote the general welfare. See 
Best
, 179 Ill. 2d at 395 (collecting cases). We note, too, that our decision does not leave vehicle dealers, or any other consumer fraud defendant, who may be faced with defending a frivolous suit without recourse. Under the Act, a court may award attorney fees and costs to the “prevailing party.” 815 ILCS 505/10a(c) (West 1996). This provision applies to prevailing defendants, as well as prevailing plaintiffs. See 
Graunke v. Elmhurst Chrysler Plymouth Volvo, Inc.
, 247 Ill. App. 3d 1015, 1020 (1993). Vehicle dealers, as well as all parties to a consumer fraud suit, may also seek sanctions under Supreme Court Rule 137 where it appears that a pleading, motion, or other paper has been “interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.” 155 Ill. 2d R. 137.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court invalidating Public Acts 87–1140 and 89–1144 as violative of the special legislation clause of our state constitution (Ill. Const. 1970, art. IV, §13).

Affirmed.

JUSTICE THOMAS, concurring in part and dissenting in part:

Like the majority, I believe that the amendments to section 10a(a) of the Act run afoul of the special legislation clause. Neither the punitive damages limitation nor the public-injury pleading requirement bears a meaningful relation to the abuses identified by the legislature, as neither provision restricts an attorney’s ability to “ring up” fees in vehicle cases involving only nominal claims. I therefore join in the majority opinion to the extent that it invalidates these two particular amendments.

That said, I am convinced that the remaining amendments to section 10a are perfectly constitutional. The special legislation clause does not prohibit all classifications; rather, its purpose is to prevent only 
arbitrary
 legislative classifications. 
In re Petition of the Village of Vernon Hills
, 168 Ill. 2d 117, 122 (1995). Accordingly, if 
any set of facts
 can reasonably be conceived to justify distinguishing the class to which the statute applies from the class to which the statute is inapplicable, then the General Assembly may constitutionally classify persons or objects for purpose of legislative regulation or control and may enact laws applicable only to those persons or objects. 
In re Petition of the Village of Vernon Hills
, 168 Ill. 2d at 122. Stated differently, 
a statute will be held unconstitutional as special legislation “only if it was enacted for reasons
 totally unrelated 
to the pursuit of a legitimate State goal.” (Emphasis added.) 
Bilyk v. Chicago Transit Authority
, 125 Ill. 2d 230, 236 (1988). In this context, the General Assembly is not required to convince this court of the correctness of its legislative judgment, as this court is not empowered to adjudicate the accuracy of legislative findings. 
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 389-90 (1997).

According to the majority, the amendments at issue “were enacted in response to a perceived problem: abuses of the Act by certain members of the plaintiffs’ bar who purportedly pursue consumer fraud cases against vehicle dealers simply to generate legal fees recoverable under the Act.” Slip op. at 12-13. According to one of the amendments’ sponsors, “[t]his seems to be one area where there has been an abuse of this statute.” 89th Ill. Gen. Assem., House Proceedings, May 22, 1995, at 290-91 (statement of Representative Cross). That this problem exists must be taken as true, as “[c]ourts are not empowered to ‘adjudicate’ the accuracy of legislative findings.” 
Best
, 179 Ill. 2d at 389.
(footnote: 1) Consequently, the 
only
 question for this court is whether the amendments at issue were enacted “for reasons
 totally unrelated
”
 
to the problem identified by the legislature. (Emphasis added.) 
Bilyk
, 125 Ill. 2d at 236. If they were not, then they are constitutional and must be enforced.

There is no question that the amendments relating to notice and settlement are directly related to the abuses identified by the legislature. See 815 ILCS 505/10a(f), (g), (h) (West 1996). The notice requirement provides that, at least 30 days prior to filing suit against a car dealer under the Act, the plaintiff must serve the dealer with both a notice of claim and a demand for relief. 815 ILCS 505/10a(h) (West 1996). The dealer then has 30 days in which to make a settlement offer, which the plaintiff may accept or reject. 815 ILCS 505/10a(h) (West 1996). If the plaintiff rejects the offer, and the judgment ultimately obtained is less than that offer, then the plaintiff forfeits attorney fees and costs from the date of the offer. 815 ILCS 505/10a(h) (West 1996). The settlement provisions allow both consumer fraud plaintiffs and car dealer defendants, at any time more than 30 days before trial, to tender an offer of judgment to be entered against the car dealer. If the plaintiff rejects the dealer’s offer and later fails to obtain a judgment greater than that offer, then the plaintiff forfeits attorney fees and costs from the date of the offer. 815 ILCS 505/10a(f) (West 1996). If the dealer rejects the plaintiff’s offer, and the plaintiff later obtains a judgment greater than or equal to that offer, then the plaintiff is entitled to prejudgment interest as of the date of the offer. 815 ILCS 505/10a(g) (West 1996). 

No one can seriously contend that the foregoing amendments were enacted for reasons “totally unrelated” to the problem identified by the legislature: namely, the filing and dragging out of nominal vehicular fraud claims for the sole purpose of “ringing up” statutory attorney fees. Sections 10a(f) and 10a(h) give car dealers, who the legislature specifically identified as uniquely subject to the Act’s abuse, the opportunity to assess a claim, make a settlement offer, and at least attempt to stem the accumulation of superfluous fees. Section 10a(g), in turn, ensures that the risk is spread evenly, as car dealers who improvidently reject a reasonable settlement offer run the risk of paying not only the judgment, attorney fees, and costs, but prejudgment interest as well.
(footnote: 2) In other words, these amendments narrowly target an isolated form of litigation abuse while simultaneously preserving an injured victim’s statutory right to relief, including the collection of attorney fees. Admittedly, these amendments may someday induce a plaintiff to accept a less-than-ideal settlement offer, and they may even insulate the occasional car dealer from paying the plaintiff’s attorney fees simply because the offer exceeded the judgment by a single dollar. That, however, is not our concern. “[T]he search for less onerous alternative means of securing a governmental interest” has no place in rational-basis review (
Kalodimos v. Village of Morton Grove
, 103 Ill. 2d 483, 509 (1984)), and the legislature is by no means limited to choosing the single, most effective remedy for a given problem (
Bernier v. Burris
, 113 Ill. 2d 219, 252 (1986)).

In sum, I agree with the majority’s decision to invalidate the amendments to section 10a(a) of the Act. The remaining amendments, however, are constitutional and should be enforced.

JUSTICE GARMAN joins in this partial concurrence and partial dissent.

FOOTNOTES
1:     
1
The existence of this problem is further corroborated by the fact that both the Illinois Trial Lawyers Association and the Illinois Attorney General’s office willingly participated in the drafting of these amendments.

2:     
2
The majority’s characterization of these amendments as a wholesale bonanza for car dealers is incomplete at best. Indeed, the majority opinion focuses exclusively upon the unique 
benefits
 that car dealer defendants enjoy under sections 10a(f) and 10a(h), while nowhere acknowledging the concomitant and equally unique 
burden
 that such defendants bear under section 
10a(g). Only car dealers risk the assessment of prejudgment interest for improvidently rejecting a settlement offer. See 815 ILCS 505/10a(g) (West 1996).